UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| REV. BARRY D. BILDER, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> JANICE A. DYKSTRA and JANE/JOHN ) <br> DOE, Individual(s) as discovery may reveal, ) <br> ) <br> Defendants. ) | 19 C 4999 <br><br> Judge Charles P. Kocoras |

## ORDER

Before the Court is Defendant Janice A. Dykstra's ("Dykstra") motion to dismiss Plaintiff Rev. Barry D. Bilder's ("Barry") complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the following reasons, the Court grants Dykstra's motion for summary judgment.

## STATEMENT

The following facts are taken from the record and are undisputed unless otherwise noted.

Plaintiff Barry is an Oklahoma citizen and the brother of Defendant Dykstra, an Illinois citizen. The parties had a third sibling, Richard J. Bilder ("Richard"). Dykstra, Barry, and Richard were all the children of John Bilder ("John").

On August 10, 1995, John appointed Dykstra as the Executor of his Last Will and Testament. On November 27, 2001, Richard died. Four days later, John died. On June 5, 2002, Dykstra was appointed as the Independent Administrator of both Richard and John's estates. According to John's Last Will and Testament, all of his assets were to pour over into his *inter vivos* trust, of which Dykstra was the sole beneficiary at the time of John's death. Although Richard died intestate, he also created an *inter vivos* trust prior to his death that listed Dykstra as the sole beneficiary. As such, Dykstra came into possession of Richard and John's property.

In July 2015, a civil matter arose between the parties in Oklahoma that involved real estate previously purchased by John. In the course of obtaining discovery for that matter in July 2016, Barry obtained the probate documents of Richard and John's estates. Upon reviewing the documents in July 2017, Barry discovered alleged forgeries on two probate documents: (1) a June 5, 2002 document titled "Waiver of Notice," which waived his right to notice regarding the probate hearing, the right to require formal proof of the will and to contest the will's admission to probate, and his rights in independent administration; and (2) an August 4, 2006 document titled "Receipt and Approval on Closing of Independent Administration," acknowledging that Barry received his distributive share of the estate in full. Barry alleges that Dykstra fraudulently prevented him from receiving his inheritance by forging his signature on these two documents, which prevented his involvement in the probate process and falsely acknowledged his receipt of inheritance when he had not received a share.

2

Based on these events, Barry filed his complaint on July 25, 2019, alleging a claim for forgery.[1] On October 3, 2019, Dykstra filed the instant motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) "tests the sufficiency of the complaint, not the merits of the case." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012). The allegations in the complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Plaintiffs need not provide detailed factual allegations, but they must provide enough factual support to raise their right to relief above a speculative level. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A claim must be facially plausible, meaning that the pleadings must "allow…the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The claim must be described "in sufficient detail to give the defendant 'fair notice of what the…claim is and the grounds upon which it rests.'" *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to withstand a 12(b)(6) motion to dismiss. *Iqbal*, 556 U.S. at 678.

---

[1] The parties note that there is no civil cause of action for forgery in Illinois, so Dykstra construes this cause of action as a tort law claim for fraud or intentional interference with inheritance.

In considering a motion to dismiss, the Court may consider documents "referred to in the plaintiff's complaint [that] are central to his claim." *188 LLC v. Trinity Industries, Inc.*, 300 F.3d 730, 735 (7th Cir. 2002). However, if a moving party relies on additional materials, the motion must be converted to a motion for summary judgment under Federal Rule of Civil Procedure 56. Given that the Court must rely on such materials to resolve this motion, we deem it appropriate to convert the motion to a motion for summary judgment.

In ruling on a motion for summary judgment, the Court considers the "record as a whole." *Morgan v. Harris Trust & Sav. Bank of Chi.*, 867 F.2d 1023, 1026 (7th Cir. 1989). In its consideration, the Court construes all facts and draws all reasonable inferences in favor of the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact arises where a reasonable jury could find, based on the evidence of record, in favor of the non-movant. *Anderson*, 477 U.S. at 248.

Dykstra urges the Court to grant her motion on two grounds:[2] (1) Barry cannot state a claim because Dykstra was the sole beneficiary of Richard and John's estates, and (2) Barry released Dykstra from any and all claims he may have against her

---

[2] Dykstra also asserts that Barry's claims are barred by the statue of limitations. However, the Court declines to rule on this point given that the remaining arguments are dispositive.

pursuant to the settlement agreement the parties entered on February 28, 2019. The Court addresses each argument in turn.

## I. Barry's Damages and Expectation of Inheritance

Dykstra asserts that Barry cannot state a claim for fraud or intentional interference with inheritance because he was not listed as a beneficiary of either Richard or John's trusts. To establish a claim for common-law fraud, Barry would have to plead sufficient facts to show damages. *Giammanco v. Giammanco*, 253 Ill. App. 3d 750, 758 (1993). To allege intentional interference with inheritance under Illinois law, Barry would have to plead damages, as well as "the existence of an expectancy" and "defendant's intentional interference with the expectancy." *In re Estate of Ellis*, 236 Ill. 2d 45, 52 (2009). If Barry was not listed as a beneficiary of Richard or John's trusts, then he cannot plead that he had a right to inheritance or that any such interference with that right resulted in damages to him.

Turning first to John's estate, his Last Will and Testament bequeathed all of his property to his *inter vivos* trust. Under these circumstances, "the estate so devised and bequeathed shall be governed by the terms and provisions of the instrument creating the trust including any amendments or modifications in writing made at any time before or after the making of the will and before the death of the testator." *In re Meskimen's Estate*, 39 Ill. 2d 415, 420 (1968). Based on John's trust, Dykstra was the sole beneficiary of his property. Therefore, Barry had no expectation of inheritance as to John's estate, and he cannot establish a claim with respect to John's estate.

5

Turning next to Richard's estate, he died without a will, but he did establish an *inter vivos* trust prior to his death. Illinois courts have recognized such a trust as a "will-substitute," or an alternative way to pass property upon death. *In re Estate of Boyar*, 2012 IL App (1st) 111013, ¶ 31 ("…[O]ur courts have taken into account the proliferation of trusts as an alternative, if not the preferred, means of passing property at death."). Accordingly, the Court should affect the terms of Richard's trust in determining whether Barry had an expectation of inheritance. As with John's trust, Richard's trust designated Dykstra as the sole beneficiary. Therefore, Barry had no expectation of inheritance as to Richard's estate and also cannot establish a claim on these grounds.

The fact that Barry was an heir of both John and Richard does not change this outcome. Although Barry correctly notes that heirs "cannot be disinherited upon mere conjecture," *Pontius v. Conrad*, 317 Ill. 241, 246 (1925), an heir can be disinherited "either by express words or by necessary implication." *Id.* To disinherit by implication, the implication must be "so inevitable that an intention to the contrary cannot be supposed." *Id.* Here, both John and Richard's trusts expressly and unambiguously state that Dykstra is the sole beneficiary of the trust. This necessarily implies that Barry is not a beneficiary of either trust and does not stand to directly benefit from them. Therefore, this language overcomes the presumption against disinheriting an heir.

**II. Preclusion of Claims by February 2019 Settlement Agreement**

Dysktra next asserts that even if Barry could establish an expectation of inheritance and accompanying damages, his claims would be barred by the release in the parties' February 2019 settlement agreement. The Court agrees.

"[T]here is little question that courts may enforce general releases…." *Fair v. Int'l Flavors & Fragrances, Inc.*, 905 F.2d 1114, 1115 n.1 (7th Cir. 1990). "Where a contractual release is clear and explicit, we must enforce it as written." *Hampton v. Ford Motor Co.*, 561 F.3d 709, 714 (7th Cir. 2009) (citing *Rakowski v. Lucente*, 104 Ill.2d 317, 84 Ill. Dec. 654, 472 N.E.2d 791, 794 (Ill.1984)). Moreover, such a release is "valid as to all claims of which a signing party has actual knowledge or that he could have discovered upon reasonable inquiry." *Fair*, 905 F.2d at 1116.

The February 2019 settlement agreement includes a release of:

> …any and all claims, causes of action, damages, physical, mental or property injuries…which Barry Bilder ever had, now has, or which may later appear or accrue, whether known or unknown, for any losses, damages, injuries, indemnity, expenses and compensation of every kind of nature, whether anticipated or unanticipated, resulting from, arising out of, connected directly or indirectly with or relating in any way to the [Oklahoma litigation], including but not limited to all claims which were set forth or which may might have been set forth in the [Oklahoma litigation]…whether or not asserted in the action.

Dykstra's SOF 31. While this language is broad, it is still clear and explicit as to the scope of the release, so we must enforce it as written. *See Hampton*, 561 F.3d at 715 (enforcing releases with similar language). Based on the release, Barry forfeited all claims "arising out of" or "connected directly or indirectly" to the Oklahoma litigation,

7

including the ones at issue here. The Oklahoma litigation was the basis of Barry's current allegations, as he only uncovered the allegedly forged documents during the discovery phase of that litigation. Moreover, at the time of signing the February 2019 settlement agreement, Barry was aware of the grounds for the instant litigation, as he had already memorialized the alleged forgery to his attorney. As such, Barry's instant claims are barred by the February 2019 settlement agreement.

Barry tries to read ambiguity into the release by saying he only intended the release to apply to claims at issue in the Oklahoma litigation. However, "What the parties to a written contract may have understood as to the meaning of the language used is not admissible in evidence. The intention or understanding of the parties…must be determined not from what the parties thought but from the language of the contract itself." *Rakowski*, 104 Ill.2d at 323. Here, the language of the release extends beyond only the claims at issue in the Oklahoma litigation, specifying that claims "resulting from, arising out of, connected directly or indirectly with or relating in any way" to the litigation were released. The release also makes clear that any claims "which may later appear or accrue" were also barred. Therefore, the plain language of the release contradicts Barry's interpretation. Further, to the extent this was a drafting mistake on Barry's part, "[a] unilateral or self-induced mistake is not a valid ground for setting aside a clear and unambiguous release." *Id.* at 324. Therefore, the Court must abide by the terms of the release and bar Barry from raising the instant claims.

8

## **CONCLUSION**

For the aforementioned reasons, the Court grants Dykstra's motion for summary judgment. It is so ordered.

Dated: 12/6/2019

_____

Charles P. Kocoras
United States District Judge